NOT FOR PUBLICATION                                        (Docket No. 4)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                          :
DANA M. RUFFO,                            :
                                          :
                        Plaintiff,        :        Civil No. 09-5264 (RBK / JS)
                                          :
            v.                            :        **OPINION**
                                          :
WAWA, INC., et al.,                       :
                                          :
                        Defendants.       :
_____   :

**KUGLER**, United States District Judge:

        This matter comes before the Court on a motion by Defendant Wawa, Inc. ("Defendant"

or "Wawa") to dismiss Count Three of the Complaint of Plaintiff Dana M. Ruffo ("Plaintiff" or

"Ms. Ruffo") for failure to state a claim upon which relief can be granted pursuant to Federal

Rule of Civil Procedure 12(b)(6).  Count Three of the Complaint alleges breach of an implied

employment contract pursuant to the New Jersey common law as developed in Woolley v.

Hoffman La Roche, Inc., 491 A.2d 1257 (N.J. 1985), modified by, 499 A.2d 515, as well as a

breach of the duty of good faith and fair dealing.  For the reasons expressed below, the Court will

grant Defendant's motion to dismiss.

**I.      BACKGROUND[1]**

        In 2008, Ms. Ruffo worked for Wawa as a customer services manager at a franchise

_____
        [1]  The facts in this section are drawn from the allegations in Plaintiff's Complaint.

1

located on Bank Street in Cape May, New Jersey.  On June 19, 2008, Ms. Ruffo visited her

physician to address pain she was experiencing in her back and neck.  An MRI revealed that Ms.

Ruffo suffered from bulging cervical discs, and her physician ordered her to begin physical

therapy.  Ms. Ruffo began physical therapy, but the pain increased in frequency and severity.

Ms. Ruffo's pain was particularly acute at work where her job required her to remain

standing throughout her shift.  As a consequence, Ms. Ruffo took a leave of absence from work

and began consulting with a neurologist.  Ms. Ruffo's neurologist ordered her to refrain from

working until August 25, 2008.  After conducting additional testing, Ms. Ruffo's neurologist

further excused her from work until September 22, 2008.

On September 22, 2008, the Bank Street Wawa ceased operation.  The next day, Ms.

Ruffo called Tom Simmons, the Regional Wawa Manager, to ask him where she should send her

physician's note.  Mr. Simmons instructed Ms. Ruffo to contact the Human Resources

Department.  Ms. Ruffo did so, and Human Resources informed her that she had been terminated

as of September 18, 2008 because her disability application had been denied by Aetna Disability

in August and she had not worked for three consecutive weeks.  Ms. Ruffo appealed the decision

to Aetna.  Aetna indicated that they had never received any paperwork from Ms. Ruffo, despite

Ms. Ruffo's contention that her medical records had been faxed to Aetna at least twice.  As a

consequence of being denied coverage, Ms. Ruffo was billed for two September appointments

and was forced to cancel an October appointment with her neurologist.

On August 28, 2009, Ms. Ruffo commenced a civil action against Wawa by filing a

Complaint in the Superior Court of New Jersey.  The Complaint sounds in four counts.  Count

One alleges a violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.  Count

Two alleges violations of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, et seq.  Count Three alleges breach of a contract, purportedly created by operation of the Wawa Employee Handbook (the "Handbook") pursuant to Woolley, as well as a breach of the implied duty of good faith and fair dealing.  Count Four purports to preserve Plaintiff's right to amend the Complaint to name additional defendants as they are discovered.

On October 15, 2009, Wawa removed the action to this Court.  Five days later, Wawa filed the instant motion to dismiss Count Three of the Complaint.  Plaintiff formally opposed the motion on November 19, 2009, and Wawa replied to Plaintiff's opposition on November 30, 2009.  Accordingly, the matter is ripe for disposition.

## II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

3

suffice." Id. (citing Twombly, 550 U.S. at 555).  Second, the court must determine whether the

factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at

1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its

judicial experience and common sense." Id. (citing Twombly, 550 U.S. at 556).  A complaint

cannot survive where a court can only infer that a claim is merely possible rather than plausible.

See id.

## III.  DISCUSSION

Defendant argues that Plaintiff's Woolley claim should be dismissed because Ms. Ruffo

was an at-will employee and nothing in the Handbook modified the nature of this relationship.

Plaintiff counters that the Handbook created an employment contract such that Wawa was not

free to terminate Ms. Ruffo for the reasons, and/or in the manner in which it did.

In New Jersey, employment is presumptively at-will, meaning that an employer may

terminate an employee "for good reason, bad reason, or no reason at all." Witkowski v. Thomas

J. Lipton, Inc., 643 A.2d 546, 552 (N.J. 1994) (citing English v. Coll. of Med. & Dentistry, 372

A.2d 295 (N.J. 1977)).  The presumption that an employee serves at the will of the employer can

be overridden by an agreement to the contrary.  Id.  Such an agreement can be implied from a

widely distributed employment manual that articulates terms and conditions of employment,

including grounds and procedures for termination.  Id. at 553.  Indeed, "'absent a clear and

prominent disclaimer, an implied promise contained in an employment manual that an employee

will be fired only for cause may be enforceable against an employer even when the employment

is for an indefinite term and would otherwise be terminable at will.'"  Id. at 550 (quoting

Woolley, 491 A.2d at 1257).

4

To state a claim for breach of an implied contract created by an employment manual, a plaintiff must point to some language in the manual that contains "an express or implied promise concerning the terms and conditions of employment."  Id.; see Doll v. Port Auth. Trans-Hudson Corp., 92 F. Supp. 2d 416, 423 (D.N.J. 2000).  To determine whether an employment manual creates contractual obligations, a court should consider whether a fair reading of the manual gives rise to the reasonable expectations of employees that "certain benefits are an incident of the employment (including, especially, job security provisions)."  Witkowski, 643 A.2d at 552 (quoting Woolley, 491 A.2d at 1257).  Factors relevant to whether a manual gives rise to the reasonable expectation of employer obligations include the "definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution."  Id. at 550.

Defendant argues that the Handbook does not contain any promise to employees concerning the terms and conditions of their employment.  The Court is hard-pressed to disagree.  Plaintiff does not point to any specific language in the Handbook that she believes gives rise to the reasonable expectation that Wawa could not fire her without cause, nor does the Court's independent reading of the Handbook reveal any.  Presumably, Plaintiff is alleging that Wawa's stated disciplinary policy creates a legally enforceable restriction on Wawa's ability to fire Ms. Ruffo.  Such an allegation, however, is squarely belied by the section of the Handbook entitled "About Disciplinary Action," the first numbered paragraph of which states:

> Employment at Wawa is "at will" which means it is subject to termination by either the Company or the Associate at any time, for any reason.  There are no contractual relationships between the Company and the Associate, and letters, benefit or policy statements, performance appraisals; Associate handbooks or other Associate communications should not be interpreted as such.

5

(Ex. A to Certification of Amy G. McAndrew at 29.)  Far from implying that job security is an incident to Wawa employment, this section of the Handbook makes abundantly clear that Wawa retains the right to fire an associate "at any time, for any reason."  (Id.)

Plaintiff's counter-argument – that "Defendant's Motion is simply premature as Defendant's have not even filed an Answer. . . . Discovery has not been exchanged and Plaintiff is only now receiving Wawa's employee handbook as an Exhibit of Defendant's Motion" – is perhaps as alarming as it is legally ineffectual.

Although the general rule is that a district court ruling on a motion to dismiss may not consider matters outside the pleadings, there is an exception for documents that are explicitly relied upon in the complaint.  See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410 1426 (3d Cir. 1997).  The exception arises from the common-sense notion that courts need not worry about a plaintiff lacking notice of a document the plaintiff explicitly relies upon in crafting its claims.  Id.  As a consequence, Wawa's motion, relying as it does upon the same Handbook that Plaintiff alleges gives rise to an implied employment contract at Count Three of the Complaint, is not premature or improperly pursued.  Moreover, it is well-established that a defendant is not required to file an answer as a prerequisite to filing a motion to dismiss.  To the contrary, Rule 12 forbids the filing of a motion to dismiss subsequent to a defendant's responsive pleading.  See Fed. R. Civ. P. 12(b) (flush language).

In addition, Plaintiff's protestation that she is only now receiving a copy of Wawa's employee handbook suggests that Plaintiff's counsel has not conducted a reasonable inquiry into the factual and legal sufficiency of the claim contained at Count Three as required by the Federal

Rules of Civil Procedure as well as the New Jersey Rules of Professional Conduct.  See Fed. R. Civ. P. 11; New Jersey RPC 3.1.  For example, it is unclear to the Court how Plaintiff's counsel can in good faith – and consistent with the aforementioned rules – claim that "Plaintiff's termination is in direct contradiction with her employee handbook . . . ," (Complaint at 12), while insisting in his opposition brief that Defendant's motion is premature because Plaintiff's counsel is seeing the Handbook for the first time as an attachment to Defendant's motion, (see Pl.'s Opp. Br. at 1).  This is especially so considering Plaintiff's counsel's assertion that Ms. Ruffo herself never received the Handbook and his insinuation that she never even read it.  (See id. at 3.)  In light of the foregoing, the Court is satisfied that the Ms. Ruffo cannot state a claim for breach of a contract implied by the Handbook upon which relief can be granted.

Defendant also argues that the Handbook cannot imply an employment contract because it contains a disclaimer that explicitly disavows the creation of an employment contract.  In New Jersey, an employer may negate an implied contract by including a "clear and prominent disclaimer" in the employment manual.  See Doll, 92 F. Supp. 2d at 423 (citing Woolley, 491 A.2d 1257).  To be adequate, a disclaimer should appear in a prominent position and should state (1) that there is no promise of any kind contained in the manual; (2) that regardless of the contents of the manual, the employer remains free to change all working conditions without consultation or agreement; and (3) that the employer retains the power to fire anyone with or without cause.  Nicosia v. Wakefern, 643 A.2d 554, 560 (N.J. 1994).  Whether a disclaimer is clear and prominent is a function of the physical appearance of the disclaimer (typeface, point size, heading, and the degree to which it is set off to attract attention) as well as the placement of the disclaimer within the overall document and the clarity of the language chosen.  See Jackson

7

v. Georgia-Pacific Corp., 685 A.2d 1329, 1336 (N.J. Super. Ct. App. Div. 1996).  The

effectiveness of a disclaimer can be determined by a court as a matter of law where content and

placement are uncontroverted.  Wade v. Kessler Inst., 798 A.2d 1251, 1259 (N.J. 2002) (citing

Nicosia v. Wakefern Food Corp., 643 A.2d 554 (N.J. 1994)).

 The last section of the Handbook is entitled "Important Information."  The first paragraph

on this page sets out Wawa's equal opportunity disclaimer.  The second and final paragraph on

this page contains Wawa's employment contract disclaimer.  In bold-face print, it provides:

> **The employment relationship between Wawa and each of its associates is employment-at-will.  Under this relationship, an associate is free to end his or her employment with Wawa at any time for any reason with or without prior notice.  Likewise, Wawa may, at any time, decide to end an associate's employment with or without cause or prior notice.  The policies contained in this Handbook, and any supplement and/or amendment, set forth certain procedures and guidelines, which Wawa may or choose not to follow.  The statements and contents of these policies and of other Wawa documents are not promises of any kind.  Wawa reserves the right to terminate an associate's employment with or without cause.  Wawa may also change its pay structure, benefits, and/or any term or condition of employment without prior consultation or agreement with an associate.  This Handbook is not a contract guaranteeing employment for any specific duration.  The policies and practices stated in this Handbook may be changed at any time, without advance notice, at Wawa's discretion.  From time to time, you may receive updates, revisions, or supplements to the policies outlined in this Handbook.**

(Ex. A. to Certification of Amy G. McAndrew at 38.)

 The content of this disclaimer is clearly adequate under Nicosia.  Nonetheless, Plaintiff

argues that this disclaimer is not effective because Wawa deceptively hid it at the "very back" of

a thirty-nine page Handbook.  (Pl.'s Opp. Br. at 9.)

 As an initial matter, the Court notes that Plaintiff's argument comes close to collapsing of

its own weight.  Plaintiff's theory is that "a reasonable employee would stop reading the

[H]andbook at a point of interest such as progressive discipline or some other section" and therefore is unlikely to read text located at the thirty-ninth page.  (Id. at 2.)  Although the aforementioned language is located on the last page of the Handbook, a similar statement – articulating the at-will status of Wawa employees and explicitly disavowing the notion that the Handbook created an implied contractual relationship – is located at precisely the sort of "point of interest" Plaintiff suggests a reasonable employee would read, to wit, a section entitled "About Disciplinary Matters."  (Ex. A. to Certification of Amy G. McAndrew at 29.)  As a result, the Court is not persuaded that Wawa placed its employment contract disclaimer at the end of the Handbook in an effort to hide it from Wawa associates, or that the placement of the disclaimer functions to hide the disclaimer's message from ordinary Wawa employees.

Plaintiff cites to no case that stands for the proposition that an effective disclaimer cannot be located at the end of an employee manual.  In Edwards v. Schlumberger-Well Services, the District Court for the District of New Jersey found effective a disclaimer located in the front of an employee handbook because the court was impressed that the disclaimer's position was clear and prominent.  984 F. Supp. 264, 284-85 (D.N.J. 1997).  Nonetheless, as that court correctly observed, "prominence can be satisfied in a variety of settings, and . . . no single distinctive feature is essential per se to make a disclaimer conspicuous."  Nicosia v. Wakefern Food Corp., 643 A.2d 554, 561 (N.J. 1994).

In this case, no reasonable juror could conclude that Wawa did not prominently disclaim a contractual relationship with its employees.  The Handbook specifically does so at the outset of a section whose subject matter might, in a different case, be interpreted as creating entitlements. Moreover, this disclaimer is repeated under the heading of "Important Information."  (Ex. A. to

Certification of Amy G. McAndrew at 38.)  This repeated disclosure occurs in its own paragraph, is set off in bold-faced type, and appears in larger sized font than is otherwise used in the Handbook.  Such disclaimers are likely to catch the eyes of Wawa employees who read the Handbook cover-to-cover, as well as those who browse the Handbook more casually.  See id. (quoting N.J. Stat. Ann. 12A:1-201(1) ("A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.") (internal quotation marks omitted).  Accordingly, even if the Court were to agree with Plaintiff (as it does not) that certain unidentified provisions of the Handbook arguably create an enforceable employment contract, the Handbook's several disclaimers clearly negate the implication.

Finally, Plaintiff argues that even if the Court dismisses her implied contract claim, her claim for the breach of the duty of good faith and fair dealing must survive.  Plaintiff cites to no authority for this proposition.  This is not surprising as the duty of good faith and fair dealing does not arise in the absence of a contractual relationship.  See Cent. Reg'l Employees Ben. Fund v. Cephalon, Inc., No. 0903418, 2010 WL 1257790, at *5 (D.N.J. March 29, 2010) (quoting Ferraioli v. City of Hackensack Police Dep't, No. 09-2663, 2010 WL 421098, at *12 (D.N.J. Feb. 2, 2010)); Martin v. Port Auth. Transit Corp., No. 09-3165, 2010 WL 1257730, at *5 n.4 (D.N.J. March 25, 2010) (citing Wade v. Kessler, 798 A.2d 1251, 1262 (N.J. 2002)).  Because the Handbook does not give rise to an employment contract, Plaintiff cannot state a good faith and fair dealing claim.

In sum, the Handbook does not explicitly promise that Wawa will refrain from terminating employees at will.  In several places, it explicitly reserves the right to fire employees for any reason or no reason and disavows the suggestion that any Wawa correspondence with

associates creates, or is intended to create, an employment contract.  Both disclaimers are located

in contextually prominent locations and the final disclaimer is visually differentiated from

surrounding text.  Moreover, the message of these disclaimers is clear and unambiguous.  As a

result, a reasonable Wawa employee is likely to read these disclaimers and realize that he or she

remains, as before, an at-will employee.  This remains true whether the Wawa employee reads

the Handbook cover-to-cover or more casually picks through the Handbook, reading only those

sections which appear to be particularly important or interesting.  Accordingly, the Court will

grant Defendants' motion to dismiss Count Three of the Complaint.

## IV.    CONCLUSION

For the aforementioned reasons, the Court will grant Defendant's motion to dismiss

Count Three of the Complaint.  An appropriate order will issue.


Dated:   4-13-2010                                          /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge

11